Barney, J.,
delivered the opinion of the court:
This case comes to this court under a reference from the Postmaster-General under section 2 of the act of March 3, 1883 (22 Stat. L., 485), known as the Bowman Act. Prior to January 1, 1898, Long Island City, N. Y., was a separate municipality, organized and existing under the laws of the State of New York. A post-office had been established there having free delivery, and has ever since been conducted as a separate post-office. By an act of the legislature of the State of New York, Long Island City was annexed to and became a part of the city of New York on and after January 1,1898. In his letter of 'reference the Postmaster-General recites the facts above stated and asks the conclusion of the court, with an opinion, whether upon the facts so recited hereinbefore found by the court “ the carriers of the post-office known as Long Island City were, after January 1, 1898, entitled to the benefits of the provisions of section 2 of the act of January 3, 1887 (24 Stat. L., 355), or were confined to the provisions of section 3 of the same act.”
The two sections named are as follows:
“ SectioN 2. That there may be in all cities which contain a population of seventy-five thousand or more three classes of letter carriers, as follows: Carriers of the first class, whose salaries shall be one thousand dollars per annum; of the second class, whose salaries shall be eight hundred dollars per annum; and of the third class, whose salaries shall be six hundred dollars per annum.
SectioN 3. That in places containing a population of less than seventy-five thousand there may be two classes of letter carriers, as follows: Carriers of the second class, whose sala *406 ries shall be eight hundred and fifty dollars per annum, and of the third class, whose salaries shall be six hundred dollars per annum.”
The Congress has seen fit to classify mail carriers according to the population of the cities in which they are serving, and to provide for a different rate of compensation for such classes. Where the law is plain, it is unnecessary to look to the reason for its enactment, but if it wfere necessary so to do in this case it would not be difficult. When the difference in the cost of living is taken into account, a salary of $1,500 per annum in a large city is hardly equivalent to one-half that sum in the ordinary city of 10,000 inhabitants.
It is contended by the defendants that “ the laws of Congress can not be affected by the statutes of a Stateand in the brief of the defendants we are treated to a learned discussion of the important question of the relative powers of the federal and state governments as applicable to this case. As we view the question at issue, the relative rights of the States and the General Government are not in the least involved.
The laws of Congress are affected by the statutes of the different States, not by disputing their authority but by affecting and sometimes changing their application. The post-office service ramifies throughout the length and breadth of the land without reference to State lines, yet municipal bodies, which are only creatures of the States, are everywhere recognized, (1) free postage is granted within the county of publication to newspapers; (2) county rural free-delivery systems are organized; (3) mail must be delivered to every court-house; and other instances might be mentioned. If a State should see fit to enlarge the boundaries of a county in the first-cited case, would that be a startling or dangerous conflict of federal and state authority? Or if a court-house should be removed to a greater distance from the post-office, would that involve the same great question? The postal system is organized for the benefit of the whole public, and when it enters a State it takes the cities, counties, villages, railroads and other means of transportation (all creatures of the State) as it finds them, and coordinates them to its use.
*407 Section 2 of the act of January 3, 1887, provides: “That there may be in all cities which contain a population of seventy-five thousand or more * * * ” certain classes of mail carriers with different salaries named.
Section 3 of the same act provides for different classes and salaries of the same officers in places containing a population of less than 75,000, the word “ places,” instead of “ cities,” being used in the latter section for the reason, doubtless, that there are towns of less than 75,000 inhabitants which are not cities, but which are receiving free delivery.
It is thus seen that Congress has classified letter carriers with reference to the population of municipal subdivisions, and without reference to the receipts of post-offices. The question as to the classification of a letter carrier depends, then, not upon the receipts of the post-offices from which he serves, but upon the population of the city or place where he serves.
Prior to January 1, 1898, Long Island City was a separate and distinct municipal corporation or “ place,” and letter carriers from its post-office were classified and paid accordingly. On that date, by virtue of an act of the legislature of the State of New York, it became a part of the city of New York, and thereafter letter carriers serving therein were as much letter carriers serving within the city of New York as though they carried mail on Broadway or Fifth avenue. It appears to us out of place in the discussion of this case to speak of the change of a federal statute by the act of the legislature of a State. Of course, municipal corporations in every State are the creatures of legislation, Long Island City no more so than any other city, and when Congress saw fit to recognize them in the regulation of its postal affairs, it did so with the knowledge that the same power which created them could diminish or enlarge their boundaries. Congress has seen fit to say that letter carriers within a city containing a population of more than 75,000 shall be classified and jjaid according to a certain rule. The legislature of the State of New York has enlarged the boundaries of the city of New York so as to include Long Island City, and there is no longer any Long Island City as a municipal organization *408 within, the meaning of the law under consideration, and within the meaning of that law its letter carriers are New York letter carriers and not Long Island City letter carriers.
It is urged that the claimant is still a letter carrier from the Long Island City post-office and not from the New York City post-office, and that for that reason he must be classified according to the population of what was once Long Island City. We have already said that Congress has seen fit to classify and pay letter carriers according to the population of the cities where they serve without any reference to the character of the post-office where they receive their mail. Doubtless the Postmaster-General can establish as many post-offices within the city of New York or any other city as he may see fit, and cut it up into as many different post-office districts as he may see fit, and provide for the delivery of mail by mail carriers within these districts, so limited that no one of them would have a populaton of more than 75,000. If he should do this, would it be contended that such mail carriers should be classified under section 3 instead of section 2 ? If not, why can he classify under section 3 mail carriers within that part of the city of New York where he has seen fit to maintain a post-office called Long Island City? This court has nothing whatever to do with the equities in this case; it is simply a question of the construction of the statute and nothing more. But if we were to take into consideration the equities due these carriers, it is a fair presumption that when Long Island City was made by law a part of the city of New York it was so in fact, sufficiently to make the services of letter carriers there as valuable as in any other part of the city.
It is the opinion of the court that since January 1,1898, the carriers attached to the post-office at Long Island City were entitled to the benefits of section 2 of the act of January 3, 1887.
This opinion, together with the foregoing findings, will be certified to the Postmaster-General for his guidance and action.